HENRIETTA MATTSON

*v.*

JAMES M. MATTSON.

[Decided May 26th, 1915.]

1. Under court rule 194, providing that where a cause is referred to a vice-chancellor, all proceedings to the final decree shall be had before him, an application to punish a husband for contempt for non-payment of alimony should be made before the vice-chancellor who recommended the decree for divorce and fixed the alimony.

2. Court rule 205a provides that the vice-chancellor to whom a subsequent application is made, may decline to entertain the proceeding if in his judgment application should be made to the one to whom previous application has been made. In a suit for divorce the vice-chancellor to whom the proceeding was first referred recommended a decree *nisi* and fixed the allowance of alimony. Thereafter on petition to him to attach the defendant for non-payment of alimony, attachment was denied.— *Held,* that, as the material question in such proceeding is the contemptuous failure to pay, and the first vice-chancellor had heard evidence thereon, a subsequent application should ordinarily not be heard by another, but should be referred to the original one.

On application to attach for contempt.

*Mr. Edward Oakes,* for the petitioner.

*Mr. Louis G. Morten,* for the respondent.

EMERY, V. C.

This was a contested divorce case in which on the hearing Vice-Chancellor Griffin, to whom the cause had been referred, advised decree *nisi* for divorce on June 2d, 1913, and also in the same decree fixed permanent alimony at $364 annually, payable in weekly installments of $7 from the date of the decree. No final decree has yet been entered. An application to attach for contempt for non-payment of alimony due on January 12th, 1914, besides costs and counsel fees, $90.56, was made to Vice-Chancellor Griffin. After hearing in open court on the petition the application was denied. A subsequent application to attach for contempt for non-payment of alimony and counsel fees due on December 22d, 1914, and then demanded, amounting to $532 alimony and $90.56 costs was made. This demand included the amount due on the previous application. This application, on hearing before Vice-Chancellor Howell, was denied by order advised March 5th, 1915. Application is now made to a third vice-chancellor by petition on April 9th, 1915, for an attachment in not paying the entire amount of alimony due, $637, besides costs. A plea of *res adjudicata* is filed.

In my judgment, the proceeding in cases like this before different vice-chancellors in succession is altogether irregular and cannot be countenanced.

Under rule 194, where a cause is referred to a vice-chancellor, all proceedings in it, to the final decree, shall be had before him, and in the rule relating to general reference to the vice-chancellor, 204a, which is the only authority for the present application, the proviso in section 5 allows subsequent applications to another vice-chancellor, "if the cause has not been referred by special order," and even in such case, allows the vice-chancellor to whom subsequent application is made to decline to entertain it, "if, in his judgment, such application should be made to the vice-chancellor to whom any previous application in such cause has been made."

In my judgment, this cause, especially in reference to the matter of alimony fixed by the decree *nisi,* is still pending before Vice-Chancellor Griffin, and, under rule 194, the present application should be made to him. It is a case also where under rule 205a I should decline to hear the application. The amount of alimony was fixed by Vice-Chancellor Griffin apparently at a hearing in open court. A subsequent application to attach was also heard before him on oral proofs and examination, and the decision on the question whether and to what extent the hearing on subsequent applications should be considered as concluded by his previous decrees is best committed to his decision.

In these cases the hearing is often of a summary character, the evidence or all of it is not reported, and the decisions are often given only orally. The proceedings are of a summary character, sometimes somewhat informal, and necessarily so, because of the necessities and urgency of the payments to be made for the wife's protection.

In applications of this kind, whenever made and however often, the substantial question, I take it, is, whether the respondent is at the time of any application (or of the hearing) considered by the court able to pay the amount due, and as contemptuously failing to pay. That at some previous time he was held, on a previous application, unable to pay the amount due, is not of itself conclusive as to his subsequent ability, and the applicant should certainly be allowed to show such ability. But where this question of contemptuous failure to pay at the time

of the subsequent application necessarily involves a question of financial ability, which was, or was supposed to be, considered with reference to the hearing of the previous application, and on proofs then taken, then the decision, as to how far the previous proofs taken as to financial ability should control either the course of proof or the adjudication on the subsequent application, is a matter which generally can only be equitably and justly determined by the vice-chancellor who heard the previous application. The discovery either of new evidence or other matters bearing on the issue, may show the present ability to pay, notwithstanding the previous adjudication of inability, and in these cases where the court must, so far as at all possible, protect the rights of the wife given to her by its decree, opportunity to show such ability at a subsequent time cannot be denied. But, for the just protection of the respondent, the right to make subsequent application should not be made the occasion for the mere attempt to review the previous decision, either before the same or another vice-chancellor. An appeal is the only allowable proceeding to this end.

And, as I repeat, therefore the question whether and to what extent the matters relied on as contemptuous failure to pay on subsequent application should be considered as open for hearing, notwithstanding a previous denial, must ordinarily be a matter that is best committed to the court or judge before whom the previous hearing took place.

In my judgment, confusion will generally result in case another vice-chancellor should entertain subsequent applications in these cases. I will therefore advise an order directing that this application, with the proceedings and plea therein, be referred to Vice-Chancellor Griffin.